## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| RONALD HAFNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No.   1:16-cv-01075-JBM-JEH |
| | ) |
| MITSUBISHI MOTOR MANUFACTURING OF AMERICA, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER & OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 15). For the reasons explained below, Defendant's Motion is granted and the case is dismissed.

### I.  BACKGROUND[1]

Plaintiff began working for Defendant's plant in Normal, Illinois on February 6, 1989. In July 2015, Defendant announced that its Normal Plant would be closing. The majority of the plant's operations would cease in November 2015 and the plant would be closed by May 2016. Defendant entered into negotiations with International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and its local affiliated Local Union 2488 ("UAW"). Plaintiff was a member of UAW at all relevant times.

---

[1] Unless otherwise indicated, these background facts reflect the Court's determination of the undisputed facts, and are drawn from the parties' statements of facts and responses thereto. (Docs. 16, 19).

Defendant and UAW entered into two agreements to govern the severance packages provided to employees. The first was the "Separation Agreement and Release for Associates" ("Release"). (Doc. 16-4). The Release was an eight page document intended to be the "complete resolution of any and all disagreements, disputes or claims arising out of Employee's employment and separation of that employment, except for those claims that are expressly preserved. . . ." (Doc. 16-4 at 1). The second was the "Letter of Understanding Severance Package" ("Letter"). (Doc. 16-3). The Letter was an eight page document from Defendant to UAW that explained the various severance benefits available to associates. (Doc. 16-3).

The Letter created eight bands of benefits, which consisted, inter alia, of medical benefits, pension benefits, and a lump sum payment. An employee's band for benefit purposes was determined by a combination of the employee's age and years of service for the Defendant. At the time of the plant's closing, Plaintiff was fifty-six (56) years old and had twenty-six (26) years of service for the Defendant. This meant Plaintiff was eligible for the "A4" severance package, which consisted of a lump sum payment of $5,000; access to an immediate, unreduced pension; sixteen (16) months of medical and prescription drug benefits; and an additional year of service and an additional year of age added to Plaintiff for the purposes of determining his pension.

In exchange for the severance package, Plaintiff was required to sign the Release. The Release detailed the lump sum payment Plaintiff would receive and, in exchange, it would serve to release any and all claims between Plaintiff and Defendant. (Doc. 16-4). Plaintiff received the Letter and the Release on October 15, 2015. Plaintiff had until November 29, 2015 to sign the release. The Release allowed

2

Plaintiff to revoke it within seven days of its execution. Additionally, the Release advised him to consult with an attorney. By signing the Release, Plaintiff acknowledged that he had read the Release carefully and understood its meaning and intent; that he had had an opportunity to have the Release explained to him by legal counsel and he understood the legal consequences; that he agreed to the terms of the Release and was voluntarily signing it; and that his only consideration for signing the Release was what the Release stated and no other promises or representations had been made to him.

Plaintiff signed the Release on November 25, 2015. He did not revoke his acceptance. On November 30, 2015, Plaintiff's employment with Defendant terminated. He received his $5,000 lump sum payment. Additionally, he has begun collecting a full, unreduced monthly pension of $1,233. He would not have otherwise been eligible for a full, unreduced monthly pension until age 62.

Plaintiff filed a claim with the Equal Employment Opportunities Commission ("EEOC") and on December 7, 2015, the EEOC dismissed Plaintiff's Complaint and issued him a Notice of Right to Sue. (Doc. 1-2). On March 7, 2016, Plaintiff brought this Complaint alleging age discrimination, in violation of Section 4(a)(2) of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* (Doc. 1 at 1).

On July 25, 2016, Defendant filed a Motion to Dismiss for Failure to State a Claim. (Doc. 6). Defendant asserted that Plaintiff had executed a waiver of his rights to bring an ADEA claim and attached a copy of the Letter and the Release to the motion. (Doc. 7 at 7). Plaintiff contended that his waiver could not be considered

3

knowing and voluntary, because it does not meet statutory requirements for a knowing and voluntary waiver. (Doc. 12 at 4-11).

Because the waiver issue required the Court to consider matters that were outside of the pleadings, the Court converted the motion to dismiss into a motion for summary judgment about the waiver issue. (Doc. 14). On December 5, 2016, Defendant filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 15). On January 3, 2017, Plaintiff filed his response to Defendant's Motion for Summary Judgment. (Doc. 19).[2]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001)

---

[2] The Court notes that Defendant's filed a Reply to Plaintiff's Response on January 23, 2017. However, pursuant to Local Rule 7.1(D)(3), a reply must be filed within 14 days of the service of the response. Plaintiff served their Response on January 3, 2017. Defendant's Reply was due by January 17, 2017. Because Defendant's Reply was late, the Court did not consider it in ruling on the Motion for Summary Judgment.

4

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

There are no genuine issues of material facts. Plaintiff only disputed two of Defendant's thirty-two (32) proposed material facts. (Doc. 19 at 6). However, only one of these facts is actually in dispute.[3] Plaintiff asserts that the fact that the "[Release] is detailed and includes provisions that: released all claims against [Defendant], including all claims under the ADEA" is in dispute. (Doc. 19 at 6). Plaintiff claims this is in dispute due to the ambiguous language of Section 4 of the Release. (Doc. 19 at 6). However, under Illinois law,[4] whether a contract is ambiguous is a question of law. *Gen. Elec. Capital, Corp. v. Equifax Servs., Inc.*, 797 F. Supp. 1432, 1447 (N.D.

---

[3] Plaintiff disputes the proposed fact that "As consideration for the lump sum payment set forth in the [Letter], employees were required to sign the [Release]," claiming that the plain language of the Release was contradictory. (Doc. 19 at 6). However, Plaintiff previously agreed that "[t]he [Release] required [Defendant] to make a [lump sum payment]" and that "[t]his payment was in consideration for Plaintiff's agreement to 'fully and forever unconditionally release and discharge [Defendant].'" (Doc. 19 at 5). This is contradictory. Because Plaintiff agreed that the lump sum payment was consideration for the Release, the Court finds that this is fact is not in dispute. *Cuttill v. Potter*, No. 08-2199, 2010 U.S. Dist. LEXIS 107004, at *12 (C.D. Ill. Oct. 6, 2010) ("A proposed fact is not in dispute simply because a party lists that fact as 'disputed.'").

[4] The Release provides a choice-of-law provision declaring that Illinois law applies. (Doc. 16-4 at 8).

5

Ill. 1992) (citing *Ooley v. Schwitzer Div., Household Mfg., Inc.*, 961 F.2d 1293, 1298 (7th Cir. 1992)).

Therefore, summary judgment is particularly appropriate in cases, like this, which involve the interpretation of contracts. *Id.* (citing *Metalex Corp. v. Union Corp. of America*, 863 F.2d 1331, 1333 (7th Cir. 1998)). "When a contract is unambiguous, there are no genuine issues of material fact on the interpretation of the contract," and summary judgment may be granted because the contract interpretation is an issue of law. *Id.* (citing *Metalex*, 863 F.2d at 1333). Because the Release is a contract, the interpretation of the Release is proper for summary judgment if the interpretation of the Release is unambiguous. *See e.g.*, *Lloyd v. Brunswick Corp.*, 180 F.3d 893, 895 (7th Cir. 1999) (affirming the summary judgment dismissal of an ADEA claim because of a knowing and voluntary waiver).

### III.  KNOWING AND VALID WAIVER STANDARD

The only issue for determination is whether the waiver Plaintiff signed was valid. Plaintiff admits that an ADEA waiver is valid and enforceable when it is knowing and voluntary. *Lloyd*, 180 F. 3d at 895. The Older Workers Benefit Protection Act of 1990 ("OWBPA") amended the ADEA to codify the minimum requirements for a waiver to be knowing and voluntary. Pub. L. No. 101-433, 104 Stat. 978 (Oct. 16, 1990); *see also Oubre v. Entergy Operations,* 522 U.S. 422, 427 (1998) ("The OWBPA sets up its own regime for assessing the effect of ADEA waivers…."); *Blackwell v. Cole Taylor Bank*, 152 F.3d 666, 669 (7th Cir. 1998) ("Such [ADEA] waivers are enforceable if they comply with the [OWBPA]").

6

A waiver may not be considered knowing and voluntary unless it meets the following minimum statutory requirements: a) it is written in a manner calculated to be understood by the individual; b) it specifically refers to rights or claims arising under the ADEA; c) it does not waive rights or claims that may arise after the waiver is executed; d) it is supported by consideration; e) it advises the employee to consult an attorney; f) it provides the employee at least 45 days to consider the agreement; g) it allows the employee at least seven days to revoke an execution of the agreement. 29 U.S.C. § 626(f). First, Plaintiff argues that the Release was not knowing and voluntary because it violates subsection (a), in that the Release was not written in a manner to be understood by the individual. Second Plaintiff argues that the Release violates subsection (c), which forbids waivers of future claims, because the ADEA violation took place after the execution of the Release. Plaintiff does not contest that the Release meets the rest of the §626(f) requirements; therefore, the Court will not discuss them.

Additionally, although the ADEA sets forth the requirements for a waiver to be valid, these requirements are a minimum. If a plaintiff contends that he or she did not knowingly or voluntarily sign the waiver due to outside circumstances, like duress or coercion, a defendant may need to prove more. *See, e.g.*, *Sklaney v. Wilbert Funeral Servs.*, No. 10-cv-5917, 2011 U.S. Dist. LEXIS 64748, *19-22 (N.D. Ill. Jun. 17, 2011) (rejecting plaintiff's claim that he was under duress when he signed the waiver); *Lamberti v. Motorola Sols., Inc.*, No. 12 Civ. 2472 (PGG), 2014 U.S. Dist. LEXIS 38643, *30-33 (S.D.N.Y. Mar. 24, 2014) (rejecting plaintiff's claim that he was under undue influence and economic duress when he signed the waiver). Plaintiff argues

7

that Defendant failed to prove that Plaintiff validly and knowingly signed the Release without outside influence. However, Plaintiff offers no disputed facts that would indicate that Plaintiff signed the release because of some other outside influence; rather, Plaintiff repeatedly agreed that he signed the Release voluntarily. (Doc. 19 at 3-5). Therefore, the only issue remaining is whether the Release meets the statutory requirements to be knowing and voluntary under § 626(f).

## IV. DISCUSSION

Plaintiff's claim is waived because the Release is knowing and voluntary under § 626(f) and by signing it, he waived his right to bring an ADEA claim about the severance packages. First, the Release is valid because it was written in a manner that is calculated to be understood by the individual. Second, Plaintiff's claim arose before he signed the Release. Therefore, each of the two disputed requirements of § 626(f) have been met and he waived his claim by executing the Release. Each reason will be explained below.

### A. THE RELEASE WAS WRITTEN IN A MANNER CALCULATED TO BE UNDERSTOOD BY THE INDIVIDUAL

Plaintiff's Release was to written in a manner calculated to be understood by the individual. In order to do so, the Release must use plain language that does not have the effect of "misleading, misinforming, or failing to inform" participants. 29 C.F.R. § 1625.22(b)(3)-(4) (2010).

The first paragraph of the Release states that it is intended to be "the complete resolution of any and all disagreements, disputes or claims arising out of the Employee's employment and separation from that employment, except for those claims that are expressly preserved in [Section] 4(c)." (Doc. 16-4 at 1). Section 4

outlines specifically what claims are and are not being released or waived by the Release.

Section 4(a) explains to Plaintiff that the Release will release and waive all claims against Defendant, except those clearly excluded, and that in exchange for this release, Plaintiff is receiving his lump sum payment. It summarizes in clear and unambiguous language, that "[t]his means that neither Employee nor any of these persons may assert any Released Claims on Employee's behalf or arising from Employee's employment with MMNA, *Employee's separation from employment with MMNA*, or Employee's affiliation with or work for MMNA." (Doc. 16-4 at 3) (emphasis added).

Section 4(b) identifies the claims that are being released and waived by the Release. The section defines the types of claims that the Release will release and waive. It also states that Plaintiff is releasing any and all claims except those explicitly withheld by the Release. Section 4(b) states: "Except as provided in [Section] 4(c), for purposes of this [Release], the term 'Released Claim' shall mean any and all claims . . . of any kind related to Employee's employment with MMNA, but shall not include any Excluded Claims as defined herein. 'Released Claims' includes . . . (i) claims against MMNA under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. . . . ." (Doc. 16-4 at 4).

Therefore, Section 4(b) explicitly identifies that Plaintiff is releasing any and all ADEA claims that he may have against Defendant related to his employment. Implicit within the plain meaning of "related to Employee's employment with MMNA" is the termination of Plaintiff's employment. Plaintiff argues that Defendant

9

did not specifically identify that Plaintiff was waiving any claims under the ADEA arising out of his separation with Defendant because they use only "Employee's employment with MMNA" and not language such as "employment with and separation from" Defendant. However, Plaintiff's argument requires the Court to read the waiver in a disjointed fashion, whereby Section 4(b) is separate and distinct from Section 4(a). The Court declines to do so because the basic rules of contract interpretation hold that "the meaning of separate contract provisions should be considered in light of one another and the context of the entire agreement." *Taracorp v. NL Indus.*, 73 F.3d 738, 745 (7th Cir. 1996) (citations omitted). Section 4(a) clearly states that Plaintiff is releasing any "Released Claim" (including any ADEA claim) "arising from Employee's employment with MMNA, *Employee's separation from employment with MMNA*, or Employee's affiliation with or work for MMNA." (Doc. 16-4) (emphasis added). These are not separate and distinct portions of the Release; rather Section 4(a) and 4(b) are portions of Section 4, entitled "Complete Release." Additionally, given that the purpose of Release is address any and all claims arising from Plaintiff's "employment and *separation* from that employment," it indicates clearly that the Release is meant to address claims arising from the separation. (Doc. 16-4 at 2).

Additionally, Plaintiff argues that the Release is not understandable because Section 4(c) contains "Excluded Claims" which prevented Plaintiff from being aware that he was waiving his right to bring an ADEA claim against Defendant for discriminatory severance packages. Specifically, Plaintiff argues that because "Excluded Claims" included "Claims concerning Employee's pension benefits and

10

401k benefits" and "Claims concerning . . . the [Letter]," Plaintiff was unaware that he was waiving his right to bring an ADEA claim for discriminatory severance packages. (Doc. 19 at 11).

The Court rejects this argument. First, the Court notes that the "Excluded Claim" involves "Claims concerning a *breach* of this [Release] or [Letter]." (Doc. 16-4 at 5). Despite Plaintiff's selective editing, the Release does not indicate that claims concerning the Release or the Letter were waived; rather, the Release only purports to exclude claims concerning a breach of the Release or Letter.

Additionally, the Court does not agree with Plaintiff's assertion that the excluded claims "concerning Employee's pension benefits and 401K benefits" were enough to confuse Plaintiff about whether he was waiving his right to assert an ADEA claim alleging discriminatory severance packages. The plain language of this excluded claim provides that Plaintiff may bring law suits about his pension or 401K; for example, if he was not receiving his pension payments. It does not contradict the language from the previous section which states that Plaintiff is waiving any claim under the ADEA. This interpretation is strengthened by the rest of Section 4(c), which states that claims of health and dental insurance and claims concerning Plaintiff's COBRA rights are also excluded. Therefore, these exclusions indicate that claims regarding the execution of these rights are excluded from wavier. These exclusions do not indicate to the average individual that claims challenging the severance packages are excluded; especially given that Section 4(b) explicitly enumerates that Plaintiff is waiving his ADEA claims against Defendant. Therefore, when read as a whole, the Release is neither confusing nor ambiguous.

11

### B. PLAINTIFF'S ADEA CLAIM AROSE BEFORE HE SIGNED THE WAIVER

Plaintiff's claim, that the severance package is allegedly discriminatory, in violation of the ADEA, arose before Plaintiff signed the Release; therefore, he waived his claim by properly executing the Release. Plaintiff asserts that his ADEA claim arose after he executed the Release because he signed the release on November 25, 2015, and he worked until November 30, 2015. Therefore, the violation did not occur until he was paid his benefits after November 30, 2015.[5]

However, Plaintiff's asserted injury contradicts his timing argument. Plaintiff asserts that the "violations by [Defendant] of the provisions of the ADEA occurred as a consequence of the unequal terms and conditions of severance given to particular classes of employees." (Doc. 19 at 13). Therefore, the injury to Plaintiff occurred when the severance packages were created and Plaintiff was assigned a package. As Plaintiff admits, the Letter and the Release were agreed to on October 6, 2015, and Plaintiff received his severance package on October 15, 2015. Therefore, the injury to Plaintiff occurred on October 15, 2015, when he received his Letter, which contained an explanation of his severance package, as well as an explanation of all of the severance packages. A cause of action for employment discrimination occurs when the Plaintiff discovers he has been injured (that is when Plaintiff received the Letter and Release), not when he discovers that his injury was arguably unlawful. *Sharp v.*

---

[5] The Court also notes that accepting Plaintiff's argument about when the injury occurred would render toothless all such waivers that comply with the requirements of § 626(f) and are presented to an employee before termination. It would allow employees to game the severance package offer by accepting the offer while still intending to sue. The Court declines to accept an interpretation that would allow that.

12

*United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001). Therefore, when Plaintiff signed the Release and waived any ADEA claims he had against Defendant, Plaintiff waived his right to bring this lawsuit.

## V. CONCLUSION

Plaintiff has failed to present genuine issues of disputed material fact. Plaintiff signed the Release, which was a knowing and voluntary ADEA waiver under 29 U.S.C. § 626(f). Plaintiff has waived his right to bring an ADEA discrimination claim pursuant to the severance packages offered in the Letter and Release. Because there is a valid waiver, Plaintiff cannot amend his Complaint to cure the defect.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. 15) is GRANTED. Because Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 6) was converted into a Motion for Summary Judgment (Doc. 15), the Court DISMISSES Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 6) AS MOOT.

CASE TERMINATED.

Entered this _28th_ day of February, 2017.

                                                          s/ Joe B. McDade
                                                          JOE BILLY McDADE
                                                    United States Senior District Judge